## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| John Ellering; Karen Ellering; Select Associates Realty, LLC; EJK, Inc., | Civil Action, File No.:_____ |
| Plaintiffs, | |
| v. | **COMPLAINT AND DEMAND FOR TRIAL BY JURY** |
| Sellstate Realty Systems Network, Inc.; Arthur Darmanin; Neil Cresswell; Michael Krein, | |
| Defendants. | |

---

Plaintiffs, JOHN J. ELLERING and KAREN A. ELLERING, SELECT ASSOCIATES REALTY, LLC and EJK, INC. (hereinafter "Plaintiffs"), by and through their undersigned counsel, hereby sue Defendants, SELLSTATE REALTY SYSTEMS NETOWRK INC., ARTHUR DARMANIN, NEIL J. CRESSWELL, and MICHAEL KREIN (hereinafter "Defendants"), for, *inter alia*, Breach of Contract; Breach of Implied Covenant of Good Faith and Fair Dealing; Fraud, Negligent Misrepresentation, violations of the Minnesota Franchise Act, Minnesota Statutes Chapter 80C, *et seq.*, violations of the Florida Deceptive and Unfair Practices Act, Florida Statutes §501.201 *et. seq.* ("FDUTPA"), and the Florida Franchise Act, Florida Statutes § 817.416 *et seq.*, in connection with the fraudulent offering and sale of franchise rights to Plaintiffs, and allege as follows:

### PARTIES, JURISDICTION, AND VENUE

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because the matter in controversy is between parties who are citizens of different States, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

2.      Plaintiffs JOHN and KAREN ELLERING (collectively hereinafter "the Ellerings") are residents and citizens of the State of Minnesota.

3.      Plaintiff SELECT ASSOCIATES REALTY, LLC is a limited liability company organized and existing under the laws of the State of Minnesota.

4.      Plaintiff EJK, INC. is a corporation organized and existing under the laws of the State of Minnesota.

5.      Defendant SELLSTATE REALTY SYSTEMS NETWORK INC. ("Sellstate") is a Florida corporation, and its principal business address is 12800 University Drive, Unit 575, Fort Myers, Florida.

6.      Defendant ARTHUR DARMANIN ("Darmanin") is and at all times material hereto was the Chief Executive Officer and a Director of Defendant Sellstate and is a citizen of the State of Florida.  Darmanin actively and personally participated in the fraud alleged herein.

7.      Defendant NEIL J. CRESWELL ("Cresswell") is and at all times material hereto was the President and a Director of Defendant Sellstate and is a citizen of the State of Florida. Cresswell actively and personally participated in the fraud alleged herein.

8.      Defendant MICHAEL KREIN ("Krein") and at all times material hereto was the Executive Director of National Franchising for Sellstate, and is therefore a Sellsate insider with personal knowledge of Sellstate's business affairs.  Upon information and belief, Krein is a citizen of the State of Nevada.

9.      This case involves the fraudulent sale of a Sellstate Area Representative Agreement and Franchise Agreement (collectively the "Parties' Agreements"), both of which concerned the operation of Sellstate franchises in the State of Minnesota.  Sellstate is a franchisor as defined by the Minnesota Franchise Act (§ 80C.01, subd. 6) and is actively engaged in

franchise operations and sales in this State. Accordingly, Sellstate and its principals Darmanin and Creswell are subject to personal jurisdiction and to service of process in this State. *See* Minnesota Franchise Act, Minn. Stat. § 80C.20.

10. Venue is appropriate in this District pursuant to § 80C.21 of the Minnesota Franchise Act. The Minnesota Franchise Act and Minnesota Rules 2860.4400(J) prohibit a franchisor, such as Sellstate, from requiring litigation involving the franchise relationship to be conducted outside of the State of Minnesota. *See also* Exhibit A, hereto- Minnesota Addendum to Franchise Offering Circular ("Minn. Stat. § 80C.21 and Minn. Rule 2860.4400J prohibit us from requiring litigation to be conducted outside Minnesota").

11. Plaintiff also alleges that Krein tortiously interfered with the Area Representative Agreement that it held with Sellstate. Performance by the Ellerings and EJK, Inc. under the Area Representative Agreement was to occur in the State of Minnesota, and all benefits accruing therefrom were to be realized in the State of Minnesota.

12. Thus, Krein's tortious conduct was committed while intending consequences in Minnesota, as Plaintiffs felt the brunt of the harm in Minnesota, such that Minnesota was the focal point of the tortious interference, and Krein expressly aimed his tortious interference at the contract that was to be performed within the State of Minnesota. Accordingly, this Court possesses personal jurisdiction over Krein.

13. This Court possesses supplemental jurisdiction of the state law claims asserted herein pursuant to 28 U.S.C. § 1367.

14. All conditions precedent to bringing this action have been waived, excused, performed, or otherwise occurred.

15. Plaintiffs demand a trial by jury on each and every one of their claims pled herein.

## THE FTC FRANCHISE RULE

16.     The Federal Trade Commission ("FTC") Franchise Rule (16 C.F.R. §436.1, *et seq.*) requires that a franchisor disclose certain information to prospective franchisees before selling a franchise to the franchisee.  The Uniform Franchise Offering Circular ("UFOC") was the disclosure format accepted by the FTC for conveying such information to prospective franchisees at the time that the actions that are the subject of this lawsuit occurred.  (The Franchise Rule has since been amended, and what used to be known as the UFOC has since become known as the Franchise Disclosure Document, or "FDD").

17.     The FTC Franchise Rule obligates the franchisor to ensure that information contained in the UFOC is "accurate, clear, and concise."  (16 C.F.R. §436.1)  The UFOC is required to describe, *inter alia*, the franchisor, the initial investment and the material terms and conditions of the franchise agreement (hereinafter referred to as "the FTC Rule").

18.     Prospective franchisees rely on the UFOC to provide clear, accurate and concise information relating to the services and support that the franchisee should expect to receive from the franchisor.  The franchisor is responsible for ensuring the accuracy of the statements in the UFOC.

19.      Moreover, "earnings claims" that are not included in the UFOC are expressly prohibited by the FTC Franchise Rule, which prohibits "any oral, written, or visual representation to a prospective franchisee which states a specific level of potential sales, income, gross or net profit for that prospective franchisee, or which states other facts which suggest a specific level," subject to very particular exceptions.

20.     The narrow exceptions to the portion of the FTC Rule that concerns "earnings claims" requires that franchisors make any such disclosures only in the UFOC, and it requires

that they demonstrate that there exists a reasonable basis for the particular earnings claim made by the franchisor.

21.     As explained in greater detail below, the Defendants made numerous illegal earnings claims that were designed to induce, and which did induce, the Ellerings to execute a franchise agreement with Sellstate.

**Plaintiffs Are Fraudulently Induced Into The Franchise Relationship Through False Representations of Fact, False Promises, and Illegal Earnings Claims**

22.     Sellstate is a franchisor of real estate sales offices, which sells to various individuals and businesses the right to use the "Sellstate" trade name, trademark and purported "system" of operating procedures.

23.     The Ellerings had substantial real estate sales experience prior to their investigation of the Sellstate Franchise System, and were interested in expanding their opportunities in this line of business.  This interest prompted Plaintiffs to study various expansion possibilities on the internet.

24.     As part of their investigation, the Ellerings became aware of Sellstate and they ultimately visited the Sellstate website.  The website maintained by Sellstate (www.JoinSellstate.com) solicits potential purchasers of Sellstate Area Representative Rights and Franchises by indicating, among other things, the following:

     (a)    Be With The Best;

     (b)    Sellstate offers fantastic opportunities for success;

     (c)    Sellstate was designed with you in mind. Utilizing the newest technologies and concepts, our resources serve to benefit you and ensure maximum profitability;

     (d)    RISK FREE- Not affected by the profitability of the office;

     (e)    Unparalleled Support for All Members Premier Services;

(f)      Sellstate is committed to its partnership with you. It is important to recognize that our resources, support and assistance are readily available and never more than a phone call away. With Sellstate, you are never on your own and our objective is to do everything in our power to ensure your success;

(g)      Our in-house Marketing Department supplies highly effective tools and materials. We stay on top of trends to make certain that you are provided with the most powerful and up-to-date resources at your finger tips. Sellstate's IT Division maintains our corporate website and email servers ensuring a faster response time to any issues that may arise. Staff is always available to assist you with technical details and/or problems;

(h)      Office Structure- Unsurpassed design and technology;

(i)      Continuing Education- Available online anywhere, anytime;

(j)      Free Websites- An integral part of the real estate business, Sellstate provides free customizable websites to its regional owners, brokers and agents; and

(k)      Education and Training- Our mandate at Sellstate is to establish ourselves as having the best trained real estate professionals. We offer the most comprehensive and diverse training available in the industry today.

25.     On or about November 19, 2006, the Ellerings received an e-mail solicitation from Sellstate informing them of a "ONCE IN A LIFETIME OPPORTUNITY" to purchase a Master Sellstate Territory in Minnesota.

26.     The November 19, 2006 e-mail communication made additional representations regarding the Sellstate "System." The e-mail was intended to induce the recipient to "Experience the Sellstate Advantage," which Sellstate falsely represented to include the following:

- Proven business system designed to succeed in hot and cold markets;

- Low overhead office design to ensure maximum profitability;

- Effective franchise recruitment techniques;

- Superior training for your broker agents and their staff;

- Corporate Marketing supplying all forms of advertisement;

- Centralized Processing that eliminates the headache of administration;

- The means to attract the industry's best agents; and

- Cutting edge technology.

27.    Shortly following their receipt of the aforementioned e-mail, in December 2006, the Ellerings met with Defendants Darmanin and Cresswell at the Sellstate corporate office in Ft. Myers, Florida to discuss the possibility of becoming an Area Representative for Sellstate, and to discuss the possible purchase of a Sellstate Master Territory in Minnesota.

28.    During their meeting, Defendants Darmanin and Cresswell repeated the false representations contained in the November 19, 2006 e-mail, and further made the following false representations to the Ellerings:

(a)    That Sellstate was the most technologically advanced Real Estate Company and that their centralized processing, training and marketing were the best in the real estate business;

(b)    That Sellstate would support the Ellerings with their systems and marketing, would provide the Ellerings with one-on-one coaching from a top real estate coach for one (1) year along with training and coaching seminars;

(c)    That Sellstate had a full time marketing staff that would assist the Ellerings with the marketing of their Franchised Territory;

(d)    That Sellstate was updating its training materials and the website that would be made available to the Ellerings.

(e)    That Sellstate would tie its website in with the multiple Listing Service in Plaintiffs' the Ellering's Franchised Territory (Defendant Darmanin);

(f)     That 97% of the Sellstate Franchisees succeed because Sellstate provides support to its Franchisees and that these support services would be provided to the Ellerings (Defendant Cresswell);

(g)     That in the then down real estate market the Sellstate Agent Asset Development (AAD) Program and its fee structure attracts real estate agents to the point that the Ellerings would be inundated with inquiries from real estate agents (Defendant Cresswell); and

(h)     That Defendant Cresswell was earning $250,000 a month from his Sellstate Real Estate Brokerage Company and that even in the down market the Plaintiffs would realize a net profit of $37,000.00 per month with Sellstate (Defendant Cresswell).

29.     During the meeting, Darmanin also informed the Ellerings that under the Sellstate System franchises could derive additional revenue by charging their clients an administration fee for all real estate closings made by Plaintiffs' Franchisees, for which no services were required to be performed by Plaintiffs.

30.     Darmanin's statement, that the Ellerings could derive additional revenue by charging clients an administration fee for all real estate closings, was false.  Such conduct would have resulted in a violation of Section 8(b) of the Real Estate Settlement Procedures Act (RESPA).

31.     Darminian, in essence, had advised Plaintiffs to engage in an illegal activity, and used said illegal advice to attempt to induce the Ellerings into executing agreements with Sellstate.

32.     Darmanin also revised anticipated performance standards that had been prepared by John Ellering.  Darmanin increased the number of franchises that the Ellerings could expect to open, as well as the number of Realtors and Salespersons the Ellerings could expect to recruit during the first ten (10) years under their Area Representative agreement.  Darmanin explained

that he was increasing the standards because the higher levels would be easily attained by the Ellerings.

33.     The Ellerings reasonably relied on the representations made to them by the Defendants, and believed that the foregoing representations and revised Performance Standards were true, correct and realistic.

34.     Indeed, a number of the false representations that were made by Sellstate included the types of earnings claims that are expressly prohibited by the FTC Franchise Rule. Specifically, the Defendants made the following statements regarding specific levels of potential sales, income, gross or net profit for the Ellerings, or other facts which suggested a specific level of sales, income, gross or net profit:

- That the Sellstate System was RISK FREE- Not affected by the profitability of the office;

- That Sellstate had a proven business system designed to succeed in hot and cold markets;

- That Sellstate employs low overhead office design to ensure maximum profitability;

- That 97% of the Sellstate Franchisees succeed;

- That Defendant Cresswell was earning $250,000 a month from his Sellstate Real Estate Brokerage Company and that even in the down market the Plaintiffs would realize a net profit of $37,000.00 per month with Sellstate;

- That the Ellerings could earn illegal administration fees on all real estate closings made by Plaintiffs' Franchisees, Realtors and Salespersons for which no services were required to be performed by Plaintiffs; and

- That the Ellerings could expect to open more franchises, and recruit more salespeople and realtors than the Ellerings initially anticipated that they could attract.

### The Plaintiffs' Agreements

35.     In reliance upon the foregoing false representations and promises, and in reliance upon the illegal earnings claims made by the Defendants, on or about February 9, 2007, the Ellerings entered into an Area Representative Agreement with Defendant Sellstate.

36.     Under the Area Representative Agreement, the Ellerings were granted the exclusive right to represent Defendant Sellsate in procuring prospective franchisees to operate Sellstate franchised businesses in the State of Minnesota for a term of ten (10) years.

37.     Pursuant to Section 25 of the Area Representative Agreement, the Ellerings were entitled to receive the following Franchise Fees:

> (a)     50% of all the continuing Monthly Royalty Fees that Sellstate collected from all Salespersons and Franchisees in the Ellering's Franchised Territory;
>
> (b)     50% of all the Annual Renewal Fees that Sellstate collected from all Salespersons and Franchisees in the Ellering's Franchised Territory;
>
> (c)     $10,000 from each initial Franchise Fee paid to Sellstate by a Sellstate Franchisee in the Ellering's Franchised Territory; and
>
> (d)     50% of all the Franchise Renewal and Assignment Fees paid to Sellstate by a Franchisee in the Ellering's Franchised Territory.

38.     The Area Representative Agreement was subsequently assigned by the Ellerings to Plaintiff EJK, Inc. ("EJK").

39.     Thereafter, on or about June 25, 2007, Plaintiff Select Associates Realty, LLC ("Select Associates"), entered into a Franchise Agreement with Sellstate pursuant to which Plaintiff Select Associates was granted a license to operate a Sellstate franchise real estate brokerage business in Minnesota, and specifically the Northwest St. Paul area, Roseville and the

Northeast Minneapolis area (hereinafter the "Franchised Territory") for a period of up to twenty (20) years. Select Associates had the right to engage in sales outside the Franchised Territory.

40.     Under Section 15 of the Franchise Agreement, Sellstate was obligated to provide Select Associates with Consultation Services; to publish on the Internet at its website directory the name and address of Select Associates' Franchise Office; to maintain reasonable supervision and provide guidance in the management of Select Associate's Franchise Office; to furnish and update Sellstate's Graphic Standards in print and/or at its website; to arrange periodic meetings or conventions; to make available to Select Associates signs, forms, stationery and other advertising products for use in Select Associates' Franchise Office; to assist in the design or remodeling of Select Associates' Franchise Office; to provide certain manuals to Select Associates for use in the operation of its Franchise Office and to update the manuals from time to time; to show Select Associates how to operate its Sellstate franchise using the Sellstate platform at an orientation session at the Sellstate's corporate office; and to maintain an Agent Asset Development Royalty Sharing Program Fund that would be used to distribute Royalty Fees to Select Associates.

41.     Sellstate never provided the level of services and support to the Plaintiffs, as contemplated and required under Section 15 of the Franchise Agreement.

**Plaintiffs' Rights Are Transferred to a Third Party Without
Plaintiffs Granting Their Authority or Consent**

42.     In an around July of 2007, Defendant Krein joined Sellstate as its Executive Director of National Franchising.  Krein was a Sellstate insider who knew of Sellstate's various agreements and contracts, and specifically the Ellering's and EJK's Area Representative Agreement with Sellstate.

43.     Nevertheless, on or about July 11, 2008, during the term of the Franchise Agreement and the Area Representative Agreement, the Ellerings learned that Sellstate, without the Ellering's or EJK's authorization or consent, and in express violation of their Area Representative Agreement that Sellstate, transferred to Krein the Sellstate national franchise rights, and the right to receive the franchise fees therefrom - including those fees that the Ellerings and EJK were entitled to receive under their Area Representative Agreement.

44.     Upon information and belief, Krein's agreement with Sellstate permitted him to execute Sellstate Franchise and/or Area Representative Agreements with prospective franchisees within the State of Minnesota – EJK and the Ellering's exclusive Territory.

45.     In fact, during the term of the Ellering's Area Representative Agreement, Krein actively solicited at least one Minnesota realtor, whom he intended to secure as a franchisee for Sellstate.

46.     When asked about the arrangement between Sellstate and Krien, Defendants Darmanin and Cresswell responded that it was the responsibility of each Sellstate Franchisee and Area Representative to work out a deal with Krein.

47.     The agreement between Krein and Sellstate, which permitted Krein to solicit prospective franchisees and sales representatives in the State of Minnesota, resulted in a breach of EJK's Area Development Agreement.

48.     On November 20, 2008, Plaintiffs, through their then-legal counsel, mailed a letter to Sellstate informing Sellstate "that effective today, Mr. And Mrs. Ellering are terminating their Agreements with Sellstate Realty Systems, Network, Inc. due to the facts that in November 2007, Sellstate granted an individual, who is now a senior executive with Sellstate, unlimited national rights whereby he would collect fees that were required to be paid by Sellstate to

Plaintiffs, and because Sellstate provided the Ellerings false and misleading projections concerning the potential income they would realize under the Agreements as an inducement for Mr. And Mrs. Ellering to sign the Agreements."

49.     Sellstate's foregoing failures to comply with its contractual obligations to Plaintiffs constitute a material breach of Sellstate's Area Representative Agreement, and its Franchise Agreement with Plaintiffs.

## Demand For Attorneys' Fees

50.     Under the terms of the Parties' various agreements and pursuant to the various statutory claims asserted herein below, Plaintiffs hereby demand the recovery of all costs associated with this action, including all attorneys' fees.

## COUNT I
## FRAUD IN THE INDUCEMENT

51.     Plaintiffs reallege each and every allegation contained in paragraphs 1 through 50 herein.

52.     As fully set forth above, and prior to entering into a contractual relationship with Plaintiffs, the Defendants Sellstate, Darmanin, and Cresswell, made several misrepresentations of material fact and concealed material information.

53.     The Defendants each misrepresented the earnings capabilities of the business, as well as the Franchisor's support capabilities.  The Defendants also made false earnings claims.

54.     Specifically, the Defendants misrepresented the following:

-   That the Sellstate System was RISK FREE- Not affected by the
    profitability of the office;

-   That Sellstate had a proven business system designed to succeed in hot
    and cold markets;

- That Sellstate employs low overhead office design to ensure maximum profitability;

- That 97% of the Sellstate Franchisees succeed;

- That Defendant Cresswell was earning $250,000 a month from his Sellstate Real Estate Brokerage Company and that even in the down market the Plaintiffs would realize a net profit of $37,000.00 per month with Sellstate;

- That the Ellerings could earn illegal administration fees on all real estate closings made by Plaintiffs' Franchisees, Realtors and Salespersons for which no services were required to be performed by Plaintiffs;

- That the Ellerings could expect to open more franchises, and recruit more salespeople and realtors than the Ellerings proposed that they could attract;

- That Sellstate Utilizes the newest technologies and concepts;

- That Sellstate's office structure utilized unsurpassed design and technology;

- That Sellstate provides continuing technology online anywhere, anytime; and

- That Sellstate offers the most comprehensive and diverse training available in the industry today.

55.    The Defendants' representations were false, and they knew them to be false.

56.    The Defendants intended their false representations and material omissions to induce Plaintiffs to execute the Parties' various Agreements.

57.    The Defendants also misrepresented the sales, income, and profits to be anticipated from the business.

58.    The Plaintiffs justifiably relied on the Defendants' misrepresentations, and were induced to enter into the Parties' Various Agreements as a result.

59.    As a direct, proximate and foreseeable result of the Defendants' false

representations and omissions of material fact, Plaintiffs have suffered damages.

WHEREFORE, the Plaintiffs, JOHN and KAREN ELLERING, SELECT ASSOCIATES REALTY, LLC, and EJK, INC. respectfully request that this Court enter judgment in favor of the Plaintiffs and against Defendants SELLSTATE REALTY SYSTEMS NETWORK, INC., ARTHUR DARMANIN, and NEIL J. CRESSWELL for: 1) compensatory damages and lost profits, reasonable attorneys' fees, costs and interest; and 2) such other and further relief as is just and proper.

## COUNT II
## NEGLIGENT MISREPRESENTATION AND NEGLIGENT OMISSIONS

60.   Plaintiffs reallege each and every allegation contained in paragraphs 1 through 50 herein.

61.   As fully set forth above, and prior to entering into a contractual relationship with Plaintiffs, the Defendants Sellstate, Darmanin, and Cresswell, made several misrepresentations of material fact and concealed material information.

62.   The Defendants each misrepresented the earnings capabilities of the bus8iness, as well as the Franchisor's support capabilities.  The Defendants also made false earnings claims.

63.   Specifically, the Defendants misrepresented the following:

- That the Sellstate System was RISK FREE- Not affected by the profitability of the office;

- That Sellstate had a proven business system designed to succeed in hot and cold markets;

- That Sellstate employs low overhead office design to ensure maximum profitability;

- That 97% of the Sellstate Franchisees succeed;

- That Defendant Cresswell was earning $250,000 a month from his Sellstate Real Estate Brokerage Company and that even in the down

market the Plaintiffs would realize a net profit of $37,000.00 per month with Sellstate;

- That the Ellerings could expect to open more franchises, and recruit more salespeople and realtors than the Ellerings proposed that they could attract;

- That the Ellerings could earn illegal administration fees on all real estate closings made by Plaintiffs' Franchisees, Realtors and Salespersons for which no services were required to be performed by Plaintiffs;

- That Sellstate Utilizes the newest technologies and concepts;

- That Sellstate's office structure utilized unsurpassed design and technology;

- That Sellstate provides continuing technology online anywhere, anytime; and

- That Sellstate offers the most comprehensive and diverse training available in the industry today.

64.     The Defendants' representations were false, and they either knew, or should have known them to be false.

65.     The Defendants acted with reckless disregard for the truth of their false representations and material omissions, in order to induce Plaintiffs to execute the Parties' Various Agreements.

66.     The Defendants also misrepresented the sales, income, and profits to be anticipated from the business.

67.     The Plaintiffs justifiably relied on the Defendants' misrepresentations, and were induced to enter into the Parties' Various Agreements as a result.

68.     As a direct, proximate and foreseeable result of the Defendants' representations or omissions of material fact made with reckless disregard for the truth of their statements, Plaintiffs have suffered damages.

WHEREFORE, the Plaintiffs, JOHN and KAREN ELLERING, SELECT ASSOCIATES REALTY, LLC, and EJK, INC. respectfully request that this Court enter judgment in favor of the Plaintiffs and against Defendants SELLSTATE REALTY SYSTEMS NETWORK, INC., ARTHUR DARMANIN, and NEIL J. CRESSWELL for: 1) compensatory damages and lost profits, reasonable attorneys' fees, costs and interest; and 2) such other and further relief as is just and proper.

### Count III
### RESCISSION
### (Against Sellstate Only)

69.     Plaintiffs reallege each and every allegation contained in paragraphs 1 through 50 herein.

70.     Defendants defrauded Plaintiffs into executing the Parties' various Agreements.

71.     Plaintiffs have rescinded the Parties' various Agreements and have notified Sellstate of such rescission.

72.     Plaintiffs have no adequate remedy at law.

WHEREFORE, the Plaintiffs, JOHN and KAREN ELLERING, SELECT ASSOCIATES REALTY, LLC, and EJK, INC. respectfully request that this Court enter judgment in favor of the Plaintiffs and against Defendants SELLSTATE REALTY SYSTEMS NETWORK, INC. for: 1) rescission of the Area Representative Agreement; 2) rescission of the Franchise Agreement; 3) rescission damages, reasonable attorneys' fees, costs and interest; 4) exemplary and/or punitive damages; and 5) such other and further relief as is just and proper.

### COUNT IV
### BREACH OF THE AREA REPRESENTATIVE AGREEMENT AND BREACH OF THE
### IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (Against Sellstate Only)

73.     Plaintiffs reallege each and every allegation contained in paragraphs 1 through 50

herein.

74.     Sellstate, without the Ellering's authorization or consent, and in express violation of the Area Representative Agreement that Sellstate held with the Ellerings and EJK, transferred to Krein the Sellstate national franchise rights, and the right to receive the franchise fees therefrom including those which the Ellerings and EJK were entitled to receive under their Area Representative Agreement.

75.     Sellstate's foregoing actions constitute a breach of the Parties' Area Representative Agreement.

76.     Sellstate's bad faith actions also constitute a breach of the implied duty of good faith and fair dealing inherent in every contract. Sellstate failed to exercise good faith and to act fairly with regard to the terms of the Area Representative Agreement.

77.     Plaintiffs have been damaged as a direct and proximate result of Sellstate's aforementioned breaches of contract.

WHEREFORE, the Plaintiffs, JOHN and KAREN ELLERING, and EJK, INC. respectfully request that this Court enter judgment in favor of the Plaintiffs and against Defendant SELLSTATE REALTY SYSTEMS NETWORK, INC. for: 1) compensatory damages and lost profits, reasonable attorneys' fees, costs and interest; and 2) such other and further relief as is just and proper.

## COUNT V
## BREACH OF THE FRANCHISE AGREEMENT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (Against Sellstate Only)

78.     Plaintiffs reallege each and every allegation contained in paragraphs 1 through 50 herein.

79.     Sellstate breached Section 15 of the Franchise Agreement, by failing: to provide Select Associates with Consultation Services; to publish on the Internet at its website directory the name and address of Select Associates' Franchise Office; to maintain reasonable supervision and provide guidance in the management of Select Associate's Franchise Office; to furnish and update Sellstate's Graphic Standards in print and/or at its website; to arrange periodic meetings or conventions; to make available to Select Associates signs, forms, stationery and other advertising products for use in Select Associates' Franchise Office; to assist in the design or remodeling of Select Associates' Franchise Office; to provide certain manuals to Select Associates for use in the operation of its Franchise Office and to update the manuals from time to time; to show Select Associates how to operate its Sellstate franchise using the Sellstate platform at an orientation session at the Sellstate's corporate office; and to maintain an Agent Asset Development Royalty Sharing Program Fund that would be used to distribute Royalty Fees to Select Associates.

80.     Sellstate's foregoing actions constitute a breach of the Parties' Franchise Agreement.

81.     Sellstate's actions also constitute a breach of the implied duty of good faith and fair dealing inherent in every contract.  Sellstate failed to exercise good faith and to act fairly with regard to the terms of the Franchise Agreement.

82.     Plaintiffs have been damaged as a direct and proximate result of Sellstate's aforementioned breaches of contract.

WHEREFORE, the Plaintiffs, JOHN and KAREN ELLERING, and EJK, INC. respectfully request that this Court enter judgment in favor of the Plaintiffs and against Defendant SELLSTATE REALTY SYSTEMS NETWORK, INC. for: 1) compensatory damages

and lost profits, reasonable attorneys' fees, costs and interest; and 2) such other and further relief as is just and proper.

## COUNT VI
## VIOLATION OF FLORIDA
## DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

83.     Plaintiffs reallege each and every allegation contained in paragraphs 1 through 50 herein.

84.     This is an action for violation of Florida Statutes §§ 501.201, *et seq*.

85.     Franchisor is a "franchisor" within the meaning of 16 C.F.R. § 436.1.

86.     Florida's Deceptive and Unfair Trade Practices Act, Fl. Stat. § 501.203 (3), expressly provides that violations of the FTC Rule, 16 C.F.R. § 436.1, *et seq.*, constitute violations of the Florida Deceptive and Unfair Trade Practices Act.

87.     Plaintiffs were "potential franchisee[s]" within the meaning of 16 C.F.R. § 436.1, *et seq.*

88.     Franchisor is engaged in the conduct of trade or commerce in the State of Florida.

89.     "Earnings claims" that are not included in the UFOC are expressly prohibited by the FTC Franchise Rule, which prohibits "any oral, written, or visual representation to a prospective franchisee which states a specific level of potential sales, income, gross or net profit for that prospective franchisee, or which states other facts which suggest a specific level," subject to very particular exceptions.

90.     The narrow exceptions to the portion of the FTC Rule that concerns "earnings claims" requires that franchisors make any such disclosures only in the UFOC, and it requires that they demonstrate that there exists a reasonable basis for the particular earnings claim made by the franchisor.

91.     Indeed, a number of the false representations that were made by Sellstate included the types of earnings claims that are expressly prohibited by the FTC Franchise Rule. Specifically, the Defendants made the following earnings claims:

- That the Sellstate System was RISK FREE- Not affected by the profitability of the office;

- That Sellstate had a proven business system designed to succeed in hot and cold markets;

- That Sellstate employs low overhead office design to ensure maximum profitability;

- That 97% of the Sellstate Franchisees succeed;

- That the Ellerings could earn illegal administration fees on all real estate closings made by Plaintiffs' Franchisees, Realtors and Salespersons for which no services were required to be performed by Plaintiffs;

- That Defendant Cresswell was earning $250,000 a month from his Sellstate Real Estate Brokerage Company and that even in the down market the Plaintiffs would realize a net profit of $37,000.00 per month with Sellstate; and

- That the Ellerings could expect to open more franchises, and recruit more salespeople and realtors than the Ellerings proposed that they could attract.

92.     As a direct, proximate and foreseeable result of Defendants' violations of the Florida Deceptive Trade Practices Act, Plaintiffs have suffered substantial damages.

93.     Plaintiffs are entitled to recover attorneys' fees pursuant to Florida Statute § 501.2105.

WHEREFORE, the Plaintiffs, JOHN and KAREN ELLERING, SELECT ASSOCIATES REALTY, LLC, and EJK, INC. respectfully request that this Court enter judgment in favor of the Plaintiffs and against Defendants SELLSTATE REALTY SYSTEMS

NETWORK, INC., ARTHUR DARMANIN, and NEIL J. CRESSWELL for: 1) compensatory and consequential damages and lost profits, reasonable attorneys' fees, costs and interest; and 2) such other and further relief as is just and proper.

## COUNT VII
## VIOLATION OF THE FLORIDA FRANCHISE ACT

94.     Plaintiffs reallege each and every allegation contained in paragraphs 1 through 50 herein.

95.     This is an action for violation of Florida Statute § 817.416.

96.     Defendants are each a "person" within the meaning of Fl. Stat. § 817.416.

97.     Plaintiffs, while selling the Sellstate Franchise System to Plaintiffs, intentionally misrepresented the prospects of success of the franchise, by overstating the earning and growth potential of that franchise.

98.     Pursuant to Fl. Stat. § 817.416 (3), Plaintiffs are entitled to a judgment for all moneys invested in the franchise, as well as all attorneys' fees and costs incurred in bringing the action, and execution thereupon.

WHEREFORE, the Plaintiffs, JOHN and KAREN ELLERING, SELECT ASSOCIATES REALTY, LLC, and EJK, INC. respectfully request that this Court enter judgment in favor of the Plaintiffs and against Defendants SELLSTATE REALTY SYSTEMS NETWORK, INC., ARTHUR DARMANIN, and NEIL J. CRESSWELL for: 1) compensatory and consequential damages and lost profits, reasonable attorneys' fees, costs and interest; and 2) such other and further relief as is just and proper.

## COUNT VIII
## VIOLATION OF MINNESOTA FRANCHISE ACT

99.     Plaintiffs reallege each and every allegation contained in paragraphs 1 through 50

herein.

100.    This is a cause of action for a violation of the Minnesota Franchise Act, Minn. Stat. §80C.01, *et seq.*

101.    The Area Representative Agreement and Franchise Agreement at issue are "franchises" within the meaning of Minn. Stat. §80C.01 Subd. 4(a).

102.    Plaintiffs are "franchisees" within the meaning of Minn. Stat. §80C.01 Subd. 5.

103.    Sellstate is a "franchisor" within the meaning of Minn. Stat. §80C.01 Subd. 6.

104.    Defendants Darmanin and Cresswell are "persons" within the meaning of Minn. Stat. §80C.01, Subd. 12.

105.    Under Minn. Stat. §80C.13 Subd. 2, "[n]o person may offer or sell a franchise in this state by means of any written or oral communication which includes an untrue statement of a material fact or which omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."

106.    Under Minn. Stat. §80C.14 Subd. 1, "[n]o person, whether by means of a term or condition of a franchise or otherwise, shall engage in any unfair or inequitable practice in contravention of such rules as the commissioner may adopt defining as to franchises the words 'unfair and inequitable.'"

107.    Defendants violated the Minnesota Franchise Act by making false representations of material fact and false earnings claims, as fully set forth above, in order to induce Plaintiffs to execute various agreements with Sellstate and to invest large sums of money to start up and operate a Sellstate franchise.

108.    As a direct, proximate and foreseeable result of Defendants' violation of the Minnesota Franchise Act, Plaintiffs have suffered substantial damages.

109.    Pursuant to Minn. Stat. §80C.17 Subd. 1 and Subd. 3, Plaintiffs are entitled to recover damages, including reasonable attorney's fees for Defendants' violation of the Minnesota Franchise Act.

WHEREFORE, the Plaintiffs, JOHN and KAREN ELLERING, SELECT ASSOCIATES REALTY, LLC, and EJK, INC. respectfully request that this Court enter judgment in favor of the Plaintiffs and against Defendants SELLSTATE REALTY SYSTEMS NETWORK, INC., ARTHUR DARMANIN, and NEIL J. CRESSWELL for: 1) compensatory and consequential damages and lost profits, reasonable attorneys' fees, costs and interest; and 2) such other and further relief as is just and proper.

## COUNT IX
## TORTIOUS INTERFERENCE WITH CONTRACT
### (Against Krein Only)

110.    Plaintiffs reallege each and every allegation contained in paragraphs 1 through 50 herein.

111.    The Ellerings and EJK held and agreement with Sellstate, pursuant to which the Ellerings and EJK owned the exclusive rights to procure prospective Sellstate franchisees from franchise locations within the State of Minnesota.

112.    Krein was a Sellstate insider who knew of Sellstate's various agreements and contracts, and specifically the Ellering's and EJK's Area Representative Agreement with Sellstate.

113.    Krein intentionally procured a breach of the Area Representative Agreement, and agreed to supplant the Ellerings, EJK, and other Sellstate area representatives, by soliciting prospective Sellstate franchisees throughout the United States, including in Minnesota.

114.    Krein procured the aforementioned breach of the Ellering's and EJK's Area Representative Agreement without justification.

115.    Plaintiffs have suffered significant damages as a result of Krein's tortious conduct.

WHEREFORE, the Plaintiffs, JOHN and KAREN ELLERING, and EJK, INC. respectfully request that this Court enter judgment in favor of the Plaintiffs and against Defendants MICHAEL KREIN for: 1) compensatory and consequential damages and lost profits, reasonable attorneys' fees, costs and interest; and 2) such other and further relief as is just and proper.

**WHEREFORE**, Plaintiffs seek judgment from this Court as follows:

1.    Entering judgment as requested above and awarding Plaintiffs damages in excess of $75,000.00;

2.    Entering judgment in favor of Plaintiffs for pre-judgment interest from the date of the filing of this action through entry of judgment, costs, disbursements, and reasonable attorneys' fees as allowed by contract or statute; and

3.    Granting such other and further relief as the Court deems just and equitable.

Dated: March 30, 2010

SEVERSON, SHELDON, DOUGHERTY & MOLENDA, P.A.

By:  /s/ William M. Topka
        William M. Topka, #0339003
        Robert B. Bauer, #227365
     Attorneys for Plaintiffs
     7300 West 147th Street, Suite 600
     Apple Valley, Minnesota 55124
     (952) 432-3136
     topkaw@seversonsheldon.com
     bauerr@seversonsheldon.com

**AND**

ZARCO, EINHORN, SALKOWKI &
BRITO, P.A.


Robert Zarco (Fla. Bar. No. 502138)
Robert M. Einhorn (Fla. Bar. No. 858188)
K. Brian Roller (Fla. Bar. No. 18686)
(*Seeking admission Pro Hac Vice*)
Attorneys for Plaintiffs
100 SE 2nd Street, Suite 2700
Miami, Florida 33131
(305) 374-5418
rzarco@zarcolaw.com
reinhorn@ zarcolaw.com
broller@ zarcolaw.com